## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOEL HOPKINS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. _____ |
| v. | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| CLUBCORP HOLDINGS, INC., JOHN A. BECKERT, DOUGLAS H. BROOKS, ERIC | ) ) | CLASS ACTION COMPLAINT FOR: |
| L. AFFELDT, JANET GROVE, JEFF LAMB, LOU J. GRABOWSKY, EMANUEL | ) ) | (1)   Violation of § 14(a) of the Securities Exchange Act of 1934 |
| R. PEARLMAN, MARGARET SPELLINGS, WILLIAM E. SULLIVAN, SIMON M. | ) ) | (2)   Violation of § 20(a) of the Securities Exchange Act of 1934 |
| TURNER, CONSTELLATION CLUB PARENT, INC., CONSTELLATION | ) ) | |
| MERGER SUB INC., and APOLLO GLOBAL MANAGEMENT, LLC, | ) ) | (3)   Breach of Fiduciary Duties |
| | ) | |
| Defendants. | ) | |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on July 9, 2017 (the "Proposed Transaction"), pursuant to which ClubCorp Holdings, Inc. ("ClubCorp" or the "Company") will be acquired by affiliates of Apollo Global Management, LLC ("Apollo Global"), Constellation Club Parent, Inc. ("Parent") and Constellation Merger Sub Inc. ("Merger Sub," and together with Parent and Apollo Global, "Apollo").

2.      On July 9, 2017, ClubCorp's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with Apollo.  Pursuant to the terms of the Merger Agreement, shareholders of ClubCorp will receive $17.12 per share in cash.

3.      On July 26, 2017, defendants filed a preliminary proxy statement with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.  On August 8, 2017, defendants filed the definitive proxy statement with the SEC (the "Proxy Statement").

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

5.      This action is also brought as a result of the breaches of fiduciary duties by Defendants as a result of the effort to sell the Company as a result of an unfair process and for an unfair price.  For example, the merger consideration of $17.12 is less than the share price of the stock ($17.35) in January 2017 when the Board announced it was exploring strategic alternatives.  Additionally, financial analysts have valued ClubCorp significantly above the merger consideration.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

7.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ClubCorp common stock.

10.     Defendant ClubCorp is a Nevada corporation and maintains its headquarters at 3030 LBJ Freeway, Suite 600, Dallas, Texas 75234.  ClubCorp's common stock is traded on the NYSE under the ticker symbol "MYCC."

11.     Defendant John A. Beckert ("Beckert") has served as a director and Chairman of the Board of ClubCorp since August 2013.

12.     Defendant Douglas H. Brooks ("Brooks") has served as a director of ClubCorp since August 2013.

13.     Defendant Eric L. Affeldt ("Affeldt") has served as a director, President, and Chief Executive Officer ("CEO") of ClubCorp since 2006.

14.     Defendant Janet Grove ("Grove") has served as a director of ClubCorp since August 2013.

15.     Defendant Jeff Lamb ("Lamb") has served as a director of ClubCorp since June 2016.

16.     Defendant Lou J. Grabowsky ("Grabowsky") has served as a director of ClubCorp since August 2015.

17.     Defendant Emanuel R. Pearlman ("Pearlman") has served as a director of ClubCorp

since May 2017.

18.     Defendant Margaret Spellings ("Spellings") has served as a director of ClubCorp since September 2015.

19.     Defendant William E. Sullivan ("Sullivan") has served as a director of ClubCorp since August 2013.

20.     Defendant Simon M. Turner ("Turner") has served as a director of ClubCorp since May 2017.

21.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

22.     Defendant Parent is Delaware corporation and a party to the Merger Agreement.

23.     Defendant Merger Sub is a Nevada corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

24.     Defendants Parent and Merger Sub are affiliates of Apollo Global.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of ClubCorp (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable.  As of July 3, 2017, there were approximately 65,717,593 shares of ClubCorp common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm

plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29.      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30.      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

**THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

32.      By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with ClubCorp and owe the Company the duties of due care, loyalty, and good faith.

33.      By virtue of their positions as directors and/or officers of ClubCorp, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause ClubCorp to engage in the practices complained of herein.

34.      Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors

of a corporation must:

    a.    act with the requisite diligence and due care that is reasonable under the circumstances;

    b.    act in the best interest of the company;

    c.    use reasonable means to obtain material information relating to a given action or decision;

    d.    refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

    e.    avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

    f.    disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

35.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of ClubCorp, are obligated to refrain from:

    a.    participating in any transaction where the directors' or officers' loyalties are divided;

    b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

    c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

36. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to ClubCorp, Plaintiff and the other public stockholders of ClubCorp, including their duties of loyalty, good faith, and due care.

37. As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their ClubCorp common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

38. ClubCorp was founded in 1957. Today, the Company owns or operates more than 200 golf and country clubs, business clubs, sports clubs, and alumni clubs in twenty-eight states, the District of Columbia, and two foreign countries. ClubCorp has over 430,000 members. In 2013, the Company went public on the New York Stock Exchange.

39. ClubCorp's nationally recognized properties include: Firestone Country Club, Akron, Ohio; Mission Hills Country Club, Rancho Mirage, California; The Woodlands Country Club, The Woodlands, Texas; Capital Club Beijing; and Metropolitan Club Chicago.

40. On July 9, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by Apollo.

41. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

42.     Further, the Company must promptly advise Apollo of any proposals or inquiries received from other parties.

43.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Apollo a "matching right" with respect to any "Superior Proposal" made to the Company.

44.     Further locking up control of the Company in favor of Apollo, the Merger Agreement provides for a "termination fee" of $34.2 million payable by the Company to Apollo if the Individual Defendants cause the Company to terminate the Merger Agreement.

45.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

46.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

***The Merger Consideration is Inadequate***

47.     Significantly, analyst expectations, the Company's strong market position, growth, and positive future outlook establish the inadequacy of the merger consideration.

48.     First, the consideration to be provided pursuant to the Proposed Transaction significantly undervalues the Company.  The merger consideration does not adequately reflect the intrinsic value of the Company.  Moreover, the merger consideration does not adequately take into consideration how the Company is performing, considering increases in revenues reported by the Company recent quarters of the past financial year.  Notably, two years ago the Company was

trading at $24 per share.

49.     The intrinsic value of the Company is materially in excess of the merger consideration of $17.12. Financial analysts have valued ClubCorp significantly above the merger consideration.  Analysts value the take-out price, or purchase price, of ClubCorp at $24-29 per share, well above the $17.12 deal price.

50.     On April 12, 2017, the Company announced positive financial results for the 2017 first quarter. ClubCorp increased revenue by 3%, EBITDA by 4.2%, and decreased net loss 9.7%. CEO Eric Affeldt announced, "We are pleased to deliver our twelfth consecutive quarter of revenue and adjusted EBITDA growth. As we celebrate ClubCorp's 60th anniversary this year, the Company remains firmly committed to executing its three-pronged growth strategy focused on organic growth, reinvention, and acquisitions. We are particularly excited about the pacing of acquisitions, as we have already added four new clubs to our golf and country club segment this year as compared to three clubs added in fiscal 2016."

51.     In a July 11, 2017 article on Seeking Alpha titled "Who Wins in the ClubCorp Buyout?" the author notes that ClubCorp's growth has been impressive for years.  "Over the past five years, ending in 2016, revenue at the firm increased 44.2%....  This came as the number of locations owned and/or operated by ClubCorp jumped from 154 in 2013 … to 206 … and as the number of members served rose from 370,000 to 430,000."

52.     Moreover, the Company has kept up its acquisition spree; through June this year, ClubCorp has completed 5 new acquisitions.

53.     Additionally, Wells Fargo and Jeffries each valued the company at a per share price up to $24.70 and $24.85, respectively.

54.     The opportunity to invest in such Company on the precipice of success in expanding

its business sectors is a great coup for Apollo; however, it undercuts the foresight and investment of Plaintiff and all other public stockholders who have done the same.

55.     Moreover, post-closure, ClubCorp stockholders will be completely cashed out from any and all ownership interest in the Company, forever foreclosing them from receiving any future benefit in their investment as the Company continues on its upward financial trajectory.

56.     It is apparent from these statements and the facts set forth herein that this deal is designed to maximize benefits for Apollo at the expense of ClubCorp's stockholders, which indicates that ClubCorp's stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Potential Conflicts of Interest***

57.     There is strong evidence that the Proposed Transaction may be tainted by the self-interest of the Individual Defendants.  Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction, as the large, illiquid chunks of shares currently held by certain Defendants and Company insiders will be exchanged for cash.  For example, including the "golden parachute" guaranteed in the change-in-control severance agreements entered into on January 24, 2017, Affeldt, Burnett, McClellan and Keiser will receive more than $26 million:

| Name | Cash | Transaction Bonus | Equity | Perquisites / Benefits | Other | Total |
|---|---|---|---|---|---|---|
| Eric L. Affeldt | $4,784,932 | $450,000 | $6,290,328 | $147,126 | — | $11,672,386 |
| Mark A. Burnett | $2,417,808 | $450,000 | $2,337,033 | $180,536 | — | $5,385,377 |
| Curtis D. McClellan | $1,793,219 | $550,000 | $1,603,652 | $184,590 | — | $4,131,461 |
| Ingrid J. Keiser | $1,402,750 | $550,000 | $1,092,177 | $167,207 | — | $3,212,134 |
| Charles H Feddersen | $640,103 | $125,000 | $802,659 | $59,932 | — | $1,627,694 |

58.     The Proxy Statement also omits material information regarding potential conflicts of interest of the Company's officers and directors.  The Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of ClubCorp's officers and directors, including who participated in all such communications.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

59.     On July 26, 2017, defendants filed the Preliminary Proxy Statement with the SEC in connection with the Proposed Transaction. On August 8, 2017, defendants filed the Definitive Proxy Statement with the SEC.  The Proxy Statement is materially misleading and incomplete and fails to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction, which renders the Proxy Statement false and misleading.

60.     The Proxy Statement omits material information regarding ClubCorp's financial projections and the analyses performed by the Company's financial advisors, Jefferies LLC ("Jefferies") and Wells Fargo Securities, LLC ("Wells Fargo").

<u>*Omissions and/or Material Misrepresentations Concerning ClubCorp's Financial Projections*</u>

61.     With respect to ClubCorp's financial projections, the Proxy Statement fails to disclose unlevered free cash flow and its constituent line items.

62.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses Performed by Jefferies*

63.    *Discounted Cash Flow Analysis:* The Proxy Statement fails to disclose:  (i) standalone unlevered, after-tax free cash flows and the corresponding definition and line items; (ii) the terminal values of ClubCorp; (iii) the estimated value of ClubCorp's potential net operating loss carryforwards expected by management to be utilized by ClubCorp during the fiscal years ending December 26, 2017 through December 28, 2021; and (iv) the inputs and assumptions underlying the discount rate ranges of 9.0% to 10.0% and 11.5% to 12.5% and the perpetuity growth rate range of 2.75% to 3.25%.

64.    *Selected Public Companies Analysis:* The Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed.

65.    *Selected Precedent Transactions Analysis*: The Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed.

66.    *Premiums Paid Analysis*: The Proxy Statement fails to disclose the transactions observed and the premiums paid in such transactions.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses Performed by Wells Fargo*

67.    *Discounted Cash Flow Analysis:* The Proxy Statement fails to disclose:  (i) standalone unlevered, after-tax free cash flows and the corresponding definition and line items; (ii) the terminal values of ClubCorp; (iii) the estimated value of ClubCorp's potential net operating loss carryforwards expected by management to be utilized by ClubCorp during the fiscal years ending December 26, 2017 through December 28, 2021; and (iv) the inputs and assumptions

underlying the discount rate ranges of 9.0% to 10.0% and 11.5% to 12.5%.

68.     *Selected Public Companies Analysis:* The Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed.

69.     *Selected Precedent Transactions Analysis:* The Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed.

70.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

71.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; (iii) "Opinions of ClubCorp's Financial Advisors"; and (iv) "Certain Financial Projections."

72.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

73.     Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of ClubCorp's officers and directors, including who participated in all such communications.

74.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

75.      The omission of this material information renders the Proxy Statement false and

misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Interests of ClubCorp's Executive Officers and Directors in the Merger," including the following sentence:  "Parent (or its representatives) and some or all of our executive officers may have discussions from time to time with respect to such arrangements."

76.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to ClubCorp's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ClubCorp

77.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  ClubCorp is liable as the issuer of these statements.

79.     Section 14(a) of the Exchange Act provides, "[n]o solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter

which has become false or misleading."

80.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

81.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

82.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

83.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

84.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

85.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Apollo**

86.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

87.     The Individual Defendants and Apollo acted as controlling persons of ClubCorp within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions

as officers and/or directors of ClubCorp and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

88.     Each of the Individual Defendants and Apollo was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

89.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

90.     Apollo also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

91.     By virtue of the foregoing, the Individual Defendants and Apollo violated Section 20(a) of the 1934 Act.

92.     As set forth above, the Individual Defendants and Apollo had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## COUNT III

**Claim for Breach of Fiduciary Duties - Against the Individual Defendants**

93.     Plaintiff repeats and realleges the preceding allegations as if set forth at length.

94.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public stockholders.

95.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in ClubCorp.

96.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of ClubCorp by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of ClubCorp to its public stockholders.

97.     Indeed, Defendants have accepted an offer to sell ClubCorp at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

98.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction.

99.     The Individual Defendants dominate and control the business and corporate affairs of ClubCorp, and are in possession of private corporate information concerning ClubCorp's assets,

business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of ClubCorp which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

100.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

101.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of ClubCorp's assets and have been and will be prevented from obtaining a fair price for their common stock.

102.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

103.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not

contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

F.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for ClubCorp and obtain a transaction which is in the best interests of ClubCorp and its stockholders;

G.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 11, 2017                              **KEMP, JONES & COULTHARD LLP**

                              By: _/s/ Michael J. Gayan_____
                                  Michael J. Gayan
                                  Nevada Bar #11135
                                  Wells Fargo Tower, 17th Floor
                                  3800 Howard Hughes Parkway
                                  Las Vegas, NV 89169
                                  (702) 385-6000
                                  *Attorneys for Plaintiff*

**OF COUNSEL:**

**BRODSKY & SMITH, LLC**
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
(610) 667-6200

## PLAINTIFF'S CERTIFICATION

I, Joel Hopkins ("Plaintiff") declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff's transactions in ClubCorp Holdings, Inc. of securities during the Class Period specified in the Complaint are as follows (use additional sheet if necessary):

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|
| 6/29/2015 | 125 | 0 | $23.7284 per share $2966.05 total |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed

on August 11,  2017.

Sign Name: _____

Print Name: Joel Hopkins

Address: 2702 232nd PL SE

State, Zip Code: Sammamish, WA 98075

County: King